UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA )
)  No. 3:22-CR-7
v. )
)  Judge: VARLAN
LESLIE SCHWINZER )
)

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, the defendant, LESLIE SCHWINZER, and the defendant's attorney, Jonathan Moffatt, Esq., have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offense:

    (a) Count One – Wire Fraud: The defendant having devised any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, and promises, and by the concealment of a material fact, transmitted or caused to be transmitted by means of wire in interstate commerce, any writing, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in violation of 18 U.S.C. § 1343. The maximum punishment for this offense is twenty (20) years' imprisonment, a $250,000 fine, a term of supervised release up to three (3) years, and a $100 mandatory special assessment.

2. In consideration of the defendant's guilty plea:

    (a) The United States agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the information in this case and that are known to the United States at the time this plea agreement is signed by both parties.

Defendant's Initials _LS_

Page 1 of 13

3. The defendant has read the information, discussed the charge and possible defenses with defense counsel, and understands the crime charged. Specifically, the elements are: (a) the defendant knowingly participated in a scheme to defraud in order to deprive another of money; (b) the scheme included a material misrepresentation or concealment of a material fact; (c) the defendant had the intent to defraud; and (d) the defendant caused another to use the wires in interstate commerce in furtherance of the scheme.

4. In support of the defendant's guilty plea, the United States and the defendant agree and stipulate to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. The defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

(a) On or about July 3, 2018, Shirley Conklin died in Madisonville, Tennessee. At the time of her death, Shirley Conklin was receiving bi-weekly social security disbursements from the Social Security Administration and monthly pension disbursements from the New York State and Local Retirement System ("NYSLRS").

(b) Shirley Conklin was entitled to these monthly payments by operation of federal law in the case of the social security payments and New York state law in the case of the NYSLRS pension fund payments.

(c) At the time of her death, Shirley Conklin had no surviving spouse. As such, federal law required that the social security disbursements be terminated, and New York state law required that the NYSLRS payments be terminated.

(d) At the time of Shirley Conklin's death, the social security disbursements and New York state pension disbursements were being paid electronically into Conklin's bank account ending *8169 at Simmons Bank in Madisonville, Tennessee.

(e) The defendant was the daughter of Shirley Conklin.

(f) The defendant was also a signatory on Shirley Conklin's bank account ending *8169 at Simmons Bank, and had the ability to withdraw funds from the account.

(g) The defendant was aware on July 3, 2018 that: (i) her mother, Shirley Conklin, had died; (ii) her mother, Shirley Conklin, was receiving bi-weekly disbursements of social security funds and monthly disbursements of NYSLRS pension funds; (iii) these disbursements were deposited electronically into her mother's bank account ending *8169 at Simmons Bank; and (iv) upon her mother's death, the disbursements of social security funds and NYSLRS pension funds to Shirley Conklin's bank account were supposed to terminate.

(h) As a result of a reporting failure of unknown origin, neither the Social Security Administration nor the NYSLRS learned of Shirley Conklin's death until March 23, 2020 in the case of the Social Security Administration and February 22, 2021 in the case of NYSLRS.

(i) After the date of the defendant's mother's death, the Social Security Administration disbursed 27 biweekly and monthly social security payments to Shirley Conklin's account ending *8169 at Simmons Bank. These bi-weekly and monthly disbursements continued until March 18, 2020, nearly nine months after Shirley Conklin died. In total, the Social Security Administration paid approximately $35,871 to account ending *8169 that it should not have paid.

(j) After the date of the defendant's mother's death, NYSLRS disbursed 32 monthly pension fund payments to Shirley Conklin's account ending *8169 at Simmons Bank. These monthly disbursements continued until February 28, 2021, nearly 21 months after Shirley Conklin died. In total, NYSLRS paid approximately $56,351.55 to account ending *8169 that it should not have paid.

(k) The defendant was aware that these improper payments were being made into account ending *8169 by the Social Security Administration and NYSLRS during the entire time they were happening.

(l) During the entire time that these improper payments were happening, the defendant had access to account ending *8169 at Simmons Bank. The chart below depicts all the deposits into account *8619 by the Social Security Administration and NYSLRS:

| Date | Source | Deposit |
|---|---|---|
| 7/11/2018 | SSA | $729 |
| 7/18/2018 | SSA | $731 |
| 7/31/2018 | NYSLRS | $1,804.05 |
| 8/15/2018 | SSA | $729 |
| 8/22/2018 | SSA | $731 |
| 8/31/2018 | NYSLRS | $1,804.05 |
| 9/19/2018 | SSA | $729 |
| 9/26/2018 | SSA | $731 |
| 9/28/2018 | NYSLRS | $1,813.05 |
| 10/17/2018 | SSA | $729 |
| 10/24/2018 | SSA | $731 |
| 10/31/2018 | NYSLRS | $1,813.05 |
| 11/21/2018 | SSA | $729 |
| 11/28/2018 | SSA | $731 |
| 11/30/2018 | NYSLRS | $1,813.05 |
| 12/18/2018 | SSA | $729 |
| 12/26/2018 | SSA | $731 |
| 12/31/2018 | NYSLRS | $1,813.05 |
| 1/16/2019 | SSA | $1,803 |
| 1/31/2019 | NYSLRS | $1,813.05 |
| 2/20/2019 | SSA | $1,803 |
| 2/28/2019 | NYSLRS | $1,813.05 |
| 3/20/2019 | SSA | $1,803 |

Defendant's Initials *K.S.*

Page 4 of 13
Case 3:22-cr-00007-TAV-JEM   Document 5   Filed 01/31/22   Page 4 of 13   PageID #: 12

| Date | Source | Amount |
|---|---|---|
| 3/29/2019 | NYSLRS | $1,813.05 |
| 4/17/2019 | SSA | $1,803 |
| 4/30/2019 | NYSLRS | $1,813.05 |
| 5/15/2019 | SSA | $1,803 |
| 5/31/2019 | NYSLRS | $1,813.05 |
| 6/19/2019 | SSA | $1,803 |
| 6/28/2019 | NYSLRS | $1,813.05 |
| 7/17/2019 | SSA | $1,803 |
| 7/31/2019 | NYSLRS | $1,813.05 |
| 8/21/2019 | SSA | $1,803 |
| 8/30/2019 | NYSLRS | $1,813.05 |
| 9/18/2019 | SSA | $1,803 |
| 9/30/2019 | NYSLRS | $1,820.55 |
| 10/16/2019 | SSA | $1,803 |
| 10/31/2019 | NYSLRS | $1,820.55 |
| 11/20/2019 | SSA | $1,803 |
| 11/29/2019 | NYSLRS | $1,820.55 |
| 12/18/2019 | SSA | $1,803 |
| 12/31/2019 | NYSLRS | $1,820.55 |
| 1/15/2020 | SSA | $1,825 |
| 1/31/2020 | NYSLRS | $1,820.55 |
| 2/19/2020 | SSA | $1,825 |
| 2/28/2020 | NYSLRS | $1,820.55 |
| 3/18/2020 | SSA | '$1,825 |
| 3/31/2020 | NYSLRS | $1,820.55 |
| 4/30/2020 | NYSLRS | $1,820.55 |
| 5/29/2020 | NYSLRS | $1,820.55 |
| 6/30/2020 | NYSLRS | $1,820.55 |
| 7/31/2020 | NYSLRS | $1,820.55 |
| 8/31/2020 | NYSLRS | $1,820.55 |
| 9/30/2020 | NYSLRS | $1,828.05 |
| 10/31/2020 | NYSLRS | $1,828.05 |
| 11/30/2020 | NYSLRS | $1,828.05 |
| 12/31/2020 | NYSLRS | $1,828.05 |
| 1/31/2021 | NYSLRS | $1,828.05 |
| | Total | $92,222.55 |

(m)     The above payments were made electronically via wire communication in interstate commerce from St. Louis, Missouri to the Eastern District of Tennessee (in the case of payments from the Social Security Administration) and from New York to the Eastern District of Tennessee (in the case of NYSLRS). The Social Security Administration and NYSLRS would

Defendant's Initials  L.S.

not have made these payments had the defendant not concealed the material fact of her mother's death from them.

(n) The defendant withdrew all the deposited funds from July 11, 2018 through on or about December 19, 2019, when a representative of Simmons Bank contacted the defendant and told the defendant that the bank representative had been informed (by an anonymous source) that Shirley Conklin was deceased. The defendant responded by stating falsely: "no, she's fine." The bank representative then told the defendant that her mother (who was already deceased) would have to come to Simmons Bank to update her account. Of course, that never happened. After that contact, the defendant stopped withdrawing funds from account ending *8169.

(o) By March 1, 2021, the balance in account ending *8169 reached $32,069.79. All or substantially all these funds originated with the Social Security Administration or NYSLRS.

(p) On March 15, 2021, the Social Security Administration recovered $35,871 from account ending *8169, which was equal to the entire amount it overpaid.

(q) The defendant was aware that she was not lawfully permitted to retain the funds deposited into account ending *8169 after July 3, 2018. The defendant knew that these funds were paid by the Social Security Administration and NYSLRS on the condition that Shirley Conklin was still living, which was false.

(r) On April 28, 2021, a Special Agent with the Social Security Administration interviewed the defendant. As part of that interview, the defendant provided the following handwritten statement:

> "Shirley Ann Conklin my mother passed away July 3, 2018. I was getting the money up to Dec. 2019. We had a joint account up to Simmons Bank together. I am sorry I did this, I used it for bills, nothing else. I am willing to pay it back."

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    (a)    the right to have his case presented to a grand jury for these crimes;

    (b)    the right to plead not guilty;

    (c)    the right to a speedy and public trial by jury;

    (d)    the right to assistance of counsel at trial;

    (e)    the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    (f)    the right to confront and cross-examine witnesses against the defendant;

    (g)    the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    (h)    the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to Count One:

Defendant's Initials *LS*

(a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum.

(b) The Court will impose special assessment fees as required by law; and

(c) The Court may order forfeiture as applicable and restitution as appropriate.

(d) Pursuant to Rule 11(c)(1)(B), and in consideration of the terms of this plea agreement and the policy statement set forth in U.S.S.G. § 6B1.2(b) and related commentary, the United States and the defendant agree and stipulate, and agree <u>to recommend</u> at the time of sentencing, that: (i) pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is seven (7); and (ii) pursuant to U.S.S.G. § 2B1.1(b)(1)(H), the total combined loss amount is more than $40,000 but not more than $95,000 (specifically, the loss was $92,222.55, as described in the chart below paragraph 4(l)). The defendant understands and agrees that the recommendations set forth in this paragraph are made pursuant to Rule 11(c)(1)(B) and, as such, are not binding on the Court. The defendant further understands and agrees that if the recommendations set forth in this paragraph are rejected by the Court, such rejection may not be used by the defendant as a basis to rescind this plea agreement or withdraw the defendant's guilty plea.

(e) Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of § 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to § 3E1.1(a), the United States agrees, at or before the time of sentencing, to move the Court to decrease the offense level by one additional level pursuant to § 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility

for the defendant's offense, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. The defendant and the United States agree, pursuant to 18 U.S.C. § 3663(a)(3), that the order of restitution should be in the amount of $56,351.55. The defendant and the United States agree that the Court should order the full amount of restitution be paid to the New York State Comptroller.

9. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed

Defendant's Initials _LS_.

Page 9 of 13

Case 3:22-cr-00007-TAV-JEM   Document 5   Filed 01/31/22   Page 9 of 13   PageID #: 17

with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

(a) The defendant will not file a direct appeal of the defendant's conviction or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum

sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

        (b)    The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

        (c)    The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

    11.    This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. The defendant's signature on this plea agreement constitutes the defendant's admission that the facts contained herein are true and accurate. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including, without limitation, by failing to enter a guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state, or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any

other charges that the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to prosecution for the conduct contemplated by this agreement. The defendant also understands and agrees that a violation of this agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

\* \* \* \* \*

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

1/26/2022  By: _/s/ Timothy C. Harker_
Date            Timothy C. Harker
                Assistant United States Attorney

**For the Defendant:**

Jan. 26, 2022  _/s/ Leslie Schwinzer_
Date           Leslie Schwinzer
               Defendant

1/26/22  _/s/ Jonathan Moffatt_
Date     Jonathan Moffatt
         Attorney for the Defendant

Defendant's Initials L.S.